UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


TERRY HAMILTON,

                 Petitioner,

v.                            Case No. 3:13-cv-864-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                 Respondents.

_____

**ORDER**

**I. Status**

Petitioner Terry Hamilton, an inmate of the Florida penal system, initiated this action on July 18, 2013, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, Hamilton challenges a 2005 state court (Duval County, Florida) judgment of conviction for attempted sexual battery, resisting an officer without violence, battery and kidnaping. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response; Doc. 14) with exhibits (Resp. Ex.). On April 30, 2014, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 12), admonishing Hamilton regarding his obligations and giving Hamilton a time frame in which to submit a reply. Hamilton submitted a brief in reply.

<u>See</u> Rebuttal Reply Brief of Appellant (Reply; Doc. 16). This case is ripe for review.

## II. Procedural History

On December 23, 2004, the State of Florida, in Case No. 2004-CF-11201, charged Hamilton with sexual battery (count one), resisting an officer without violence to his or her person (count two), battery (count three), and two counts of kidnaping (counts four and five). Resp. Ex. C at 131-32, Amended Information. In January 2005, Hamilton proceeded to trial, <u>see</u> Resp. Ex. D, Transcript of the Jury Trial (Tr.), at the conclusion of which, on January 5, 2005, a jury found him guilty of attempted sexual battery, a lesser-included offense of sexual battery (count one), resisting an officer without violence to his or her person (count two), battery (count three), kidnaping (count four), and false imprisonment, a lesser-included offense of kidnaping (count five). <u>Id.</u> at 362-63; Resp. Ex. C at 188-92, Verdicts. On February 24, 2005, the court sentenced Hamilton to a term of life imprisonment on count four; a term of imprisonment of ten years on count one, to run consecutively to count four; a term of imprisonment of one year on count two, to run consecutively to count four; a term of imprisonment of one year on count three, to run consecutively to counts two and four; and a term of imprisonment of ten years on count five, to run consecutively to counts one and four. Resp. Ex.

C at 219-28, Judgment; 268-315, Transcript of the Sentencing (Sentencing Tr.).

On direct appeal, Hamilton, with the benefit of counsel, filed an initial brief, arguing that the circuit court erred when it: admitted the victim's statements in violation of Hamilton's right of confrontation (ground one); refused to permit Hamilton to recount statements made by the victim after permitting the State to do so (ground two); excluded testimony of the victim's history of prostitution and drug usage (ground three); and entered dual convictions and consecutive sentences for kidnaping and false imprisonment based upon the same conduct in violation of double jeopardy (ground four). Resp. Ex. G. The State filed an answer brief, <u>see</u> Resp. Ex. H, and Hamilton filed a reply brief, <u>see</u> Resp. Ex. I. On April 18, 2006, the appellate court affirmed in part and reversed in part, stating:

> Appellant was found guilty after a jury trial of attempted sexual battery, resisting an officer without violence to his or her person, battery, kidnaping, and false imprisonment. As a result, appellant was sentenced to ten years in prison for sexual battery, one year in prison each for resisting an officer without violence and for battery, life in prison for kidnaping, and ten years in prison for false imprisonment, all sentences running consecutive to the kidnaping sentence. On appeal, appellant raises several issues, including an argument that his convictions for both kidnaping and false imprisonment violate double jeopardy. The State concedes error on this double jeopardy ground, and because of this concession, we reverse and vacate appellant's conviction and sentence for false

3

> imprisonment. <u>Charneco v. State</u>, 917 So.2d 378
> (Fla. 2d DCA 2005) (reversing the appellant's
> conviction for possession of heroin on double
> jeopardy grounds where the appellant was
> convicted of both trafficking in heroin and
> possession of heroin and the State conceded
> error). We otherwise affirm the judgment and
> sentence without further discussion.

<u>Hamilton v. State</u>, 929 So.2d 575 (Fla. 1st DCA 2006) (per curiam);
Resp. Ex. J. The appellate court denied Hamilton's motion for
clarification on May 30, 2006, <u>see</u> Resp. Exs. K; L, and the mandate
issued on June 15, 2006, <u>see</u> Resp. Ex. M. The Florida Supreme Court
denied Hamilton's petition for discretionary review on August 30,
2006. <u>Hamilton v. State</u>, 939 So.2d 93 (Fla. 2006); Resp. Exs. N; O;
P; Q.

On May 24, 2007, pursuant to the mailbox rule, Hamilton filed
a pro se motion for post-conviction relief pursuant to Florida Rule
of Criminal Procedure 3.850. <u>See</u> Resp. Ex. S at 4-27. In his
request for post-conviction relief, he asserts that the State's
evidence against him was insufficient (ground one); the circuit
court improperly sentenced him as a habitual felony offender
(grounds two and four); the court erred when it imposed consecutive
sentences since his sentences were from a single criminal episode
(ground three); and counsel was ineffective because she failed to
present a security videotape and the testimony of store employees
(ground five). On August 17, 2007, the court denied grounds one,
two, four and five for the reasons stated in the State's response.
As to ground three, the court stated in pertinent part:

4

> As to Ground III, the defendant's motion is granted as to the claim that the consecutive Habitual Felony Offender sentences imposed on Counts 1, 4, and 5 of the Information should be set aside and the defendant resentenced on those counts. However, that part of Ground III which raises the issue that his sentences were from a "single criminal episode" is denied.

Id. at 33 (emphasis deleted). On September 13, 2007, the court resentenced Hamilton to a term of life imprisonment on count four; a term of imprisonment of ten years on count one, to run concurrently with count four; a term of imprisonment of one year on count two, to run consecutively to count four; and a term of imprisonment of one year on count three, to run consecutively to count two. Id. at 46-54, New Judgment.

Hamilton, with the benefit of counsel, appealed from the new judgment, arguing that the circuit court erred when it denied his request for post-conviction relief as to: the imposition of misdemeanor sentences to run consecutively to a habitual offender sentence (ground one), and his ineffectiveness claim without either an evidentiary hearing or the attachment of portions of the record which would refute the claim (ground two). Resp. Ex. T. The State filed an answer brief. Resp. Ex. U. On December 24, 2008, the appellate court affirmed the circuit court's denial as to ground one, stating that the sentences for Hamilton's misdemeanor offenses could be imposed to run consecutively to one another and to his two concurrent habitual felony offender sentences. Hamilton v. State,

996 So.2d 964 (Fla. 1st DCA 2008); Resp. Ex. V. As to the ineffectiveness claim, the court reversed and remanded the case to the circuit court to either hold an evidentiary hearing on the claim or attach portions of the record that conclusively refuted the claim. Id. The mandate issued on January 9, 2009. Resp. Ex. W.

On remand, the court held an evidentiary hearing, see Resp. Ex. Y at 11-72, Transcript of the Evidentiary Hearing (EH Tr.), and ultimately denied the ineffectiveness claim on April 10, 2012, see id. at 7-10. Hamilton appealed, see Resp. Ex. Z, and the State filed an answer brief, see Resp. Ex. AA. On January 23, 2014, the appellate court affirmed the court's denial of post-conviction relief per curiam, see Hamilton v. State, 130 So.3d 1279 (Fla. 1st DCA 2014); Resp. Ex. BB, and the mandate issued on February 18, 2014, see Resp. Ex. CC.

While his post-conviction proceedings were pending, Hamilton filed a pro se petition for writ of certiorari on February 5, 2007. Resp. Ex. EE. The appellate court construed it as a petition alleging ineffective assistance of appellate counsel and on March 30, 2007, found the unsworn petition to be "legally insufficient"; but gave Hamilton twenty days to serve a sworn amended petition. Resp. Exs. DD; HH. After Hamilton failed to timely respond, the court dismissed the action on May 2, 2007. Resp. Ex. II. On June 13, 2007, the court granted Hamilton's motion for clarification and

denied his motion for reinstatement of the action. Resp. Exs. JJ; LL.

Also, while his post-conviction proceedings were pending, Hamilton filed a pro se petition alleging ineffective assistance of appellate counsel on June 29, 2007. Resp. Ex. NN. In the petition, Hamilton asserted the trial court erred by allowing Hamilton to stand trial for kidnaping when the State failed to prove all the statutory elements (ground one); the court erred when it sentenced Hamilton as a habitual felony offender because the State failed to prove that he was convicted of two or more felonies within the last five years (ground two); and the court erred when it sentenced him to a prison term for two misdemeanor convictions (ground three). On July 25, 2007, the appellate court denied the petition on the merits. Hamilton v. State, 962 So.2d 366 (Fla. 1st DCA 2007) (per curiam); Resp. Ex. OO.

On May 10, 2012, Hamilton filed a pro se amended motion for newly discovered evidence. Resp. Ex. PP. In the request for post-conviction relief, Hamilton asserted that his counsel was ineffective due to a conflict of interest. According to Respondents, see Response at 4, and the state court docket,[1] the motion is still pending in state court.

---

[1] See https://core.duvalclerk.com (Case No. 16-2004-CF-011201-AXXX-MA).

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., No. 13-15053, 2016 WL 4474677, at *14 (11th Cir. Aug. 25, 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Hamilton's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Hamilton's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas

relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,- U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of

Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); accord Richter, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and Strickland, our review is doubly deferential. Richter, 131 S.Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. See Richter, 131 S.Ct. at 786-87; Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257-58 (11th Cir. 2012). "If this standard is difficult to meet, that is because it was meant to be." Richter, 131 S.Ct. at 786....

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014), cert. denied, 135 S.Ct. 2323 (2015); see also Hittson v. GDCP Warden, 759 F.3d 1210, 1230 (11th Cir. 2014), cert. denied, 135 S.Ct. 2126 (2015).

For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Hittson, 759 F.3d at 1232 ("[T]here is

no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); see Richter, 562 U.S. at 100 (holding and reconfirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"). Recently, the Eleventh Circuit instructed:

> Under section 2254(d), a federal court reviewing the judgment of a state court must first identify the last adjudication on the merits. It does not matter whether that adjudication provided a reasoned opinion because section 2254(d) "refers only to 'a decision'" and does not "requir[e] a statement of reasons." Id. at 98, 131 S.Ct. 770.[2] The federal court then must review that decision deferentially.

Wilson v. Warden, Ga. Diagnostic Prison, No. 14-10681, 2016 WL 4440381, at *6 (11th Cir. Aug. 23, 2016) (en banc). Once the federal court has identified the last adjudication on the merits, it must review that decision under the deferential standard of section 2254(d). Id.

> When the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in Richter. In Richter, . . . the Supreme Court of the United States ruled that, "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[] there was no reasonable basis for the state court to deny relief." Id. at 98, 131 S.Ct. 770. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether

---

[2] Harrington v. Richter, 562 U.S. 86, 98 (2011).

> it is possible fairminded jurists could
> disagree that those arguments or theories are
> inconsistent with the holding in a prior
> decision of [the] Court." <u>Id.</u> at 102; 131
> S.Ct. 770....

<u>Id.</u> at *5.

As such, the Eleventh Circuit instructed that "federal courts should not . . . assume that the summary affirmances of state appellate courts adopt the reasoning of the court below." <u>Id.</u> at *7. Nevertheless, when assessing whether there "was no reasonable basis for the state court to deny relief," <u>Richter</u>, 562 U.S. at 98, "a federal habeas court may look to a previous opinion as one example of a reasonable application of law or determination of fact." <u>Wilson</u>, 2016 WL 4440381, at *9. The Eleventh Circuit explained the role of the state trial court's reasoned opinion under these circumstances as follows:

> When the reasoning of the state trial court
> was reasonable, there is necessarily at least
> one reasonable basis on which the state
> supreme court could have denied relief and our
> inquiry ends. In this way, federal courts can
> use previous opinions as evidence that the
> relevant state court decision under review is
> reasonable. But the relevant state court
> decision for federal habeas review remains the
> last adjudication on the merits, and federal
> courts are not limited to assessing the
> reasoning of the lower court.

<u>Id.</u> Thus, to the extent that Hamilton's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S.

14

838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747-748, 111 S.Ct. 2546; Sykes,[4] supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

> default and prejudice from a violation of
> federal law. See Coleman, 501 U.S., at 750,
> 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. Maples v.

Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted); In Re Davis,

565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for

Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting Carrier, 477
> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." Id.
> at 1261 (quoting Carrier, 477 U.S. at 494, 106
> S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a

petitioner may receive consideration on the merits of a

procedurally defaulted claim if he can establish that a fundamental

miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S.Ct. at 2649.[5] "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying

the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
788.

<u>Hittson</u>, 759 F.3d at 1248; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123
(2009). "In addition to the deference to counsel's performance
mandated by <u>Strickland</u>, the AEDPA adds another layer of
deference--this one to a state court's decision--when we are
considering whether to grant federal habeas relief from a state
court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th
Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never
an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Hamilton asserts that the trial court denied
him the right to confront the victim at trial. <u>See</u> Petition at 5.
He states that the State's presentation of statements made by the
victim to a sexual assault examiner in the course of the sexual
assault examination violated his confrontation rights. <u>Id.</u> He
explains:

> The victim was not present in trial to be
> pressured by cross examine for the truth.
> State relied on medical examiner, but this was
> not the victim, the victim should have [been]
> present during trial to verify the State
> witness statements [were] true, State witness
> statements should be hear-say.

<u>Id.</u> Hamilton argued this issue on direct appeal, <u>see</u> Resp. Exs. G;
I; the State filed an Answer Brief, <u>see</u> Resp. Ex. H, and the

appellate court affirmed Hamilton's conviction and sentence per curiam as to this issue, see Hamilton, 929 So.2d 575; Resp. Ex. J. In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. H at 12-24, and therefore, the appellate court may have affirmed Hamilton's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Hamilton is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, Hamilton's claim is still without merit. The Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees a defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; see Crawford v. Washington, 541 U.S. 36, 42 (2004) (citation omitted). This includes the right to cross-examine witnesses. See Pointer v. Texas, 380 U.S. 400, 406-07 (1965). As such, the Confrontation Clause prohibits the use of "testimonial hearsay"

against a defendant to secure his conviction. <u>Crawford</u>, 541 U.S. at

53. In the instant action, Hamilton asserts that the Confrontation

Clause required the State to produce the victim to testify at trial

instead of relying on Nurse Practitioner Jodi B. Yaver to testify

about what the victim told her at the Sexual Assault Response

Center (SARC).

On federal habeas review, harmless error is determined by

applying the standard set forth in <u>Brecht v. Abrahamson</u>, 507 U.S.

619 (1993).

> On collateral review, we apply the harmless-
> error standard as articulated in <u>Brecht v.
> Abrahamson</u>, which dictates that a federal
> court may grant habeas relief on account of a
> constitutional error only if it determines
> that the constitutional error had a
> "substantial and injurious effect or influence
> in determining the jury's verdict." 507 U.S.
> 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d
> 353 (1993) (internal quotation marks omitted);
> <u>see Trepal v. Sec'y, Fla. Dep't of Corr.</u>, 684
> F.3d 1088, 1110-12 (11th Cir. 2012) (outlining
> <u>Brecht</u> analysis on federal habeas review),
> <u>cert</u>. <u>denied</u>, <u>Trepal v. Crews</u>, -- U.S.--, 133
> S.Ct. 1598, 185 L.Ed.2d 592 (2013). Under the
> <u>Brecht</u> standard, the petitioner should prevail
> when the record is "so evenly balanced that a
> conscientious judge is in grave doubt as to
> the harmlessness of an error." <u>O'Neal v.
> McAninch</u>, 513 U.S. 432, 437, 115 S.Ct. 992,
> 995, 130 L.Ed.2d 947 (1995); <u>see Caldwell v.
> Bell</u>, 288 F.3d 838, 842 (6th Cir. 2002) ("When
> faced with a <u>Sandstrom</u> error a court should
> not assume it is harmless but must review the
> entire case under the harmless-error standard
> the Supreme Court most recently expounded in
> <u>Brecht</u>...."). "To show prejudice under <u>Brecht</u>,
> there must be more than a reasonable
> possibility that the error contributed to the

conviction or sentence." Trepal, 684 F.3d at 1114 (internal quotation marks omitted).

Owens v. McLaughlin, 733 F.3d 320, 328 (11th Cir. 2013).

Applying Brecht, "a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." Mansfield v. Sec'y, Dep't of Corr., 679 F.3d 1301, 1307 (11th Cir. 2012) (quoting Brecht, 507 U.S. at 637). "To show prejudice under Brecht, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." Mason v. Allen, 605 F.3d 1114, 1123 (11th Cir. 2010) (internal quotation marks and alteration omitted).

As previously stated, the State charged Hamilton with sexual battery, see Resp. Ex. C at 131, and a jury found him guilty of attempted sexual battery, a lesser-included offense of sexual battery, see id. at 188, Verdict-Count I; Tr. at 362. At trial, Nurse Yaver testified:

> A. Okay. Basically she [(the victim)] told me that a stranger at the Smokers Express called her over to talk to her in a parking lot. And she remembers it was near the Hardees in Riverside. He hit her and he drug her to the back of a building and, he raped me, is what she told me. She said that he had hit her with his fist. She described penile/vaginal intercourse only and she said there was no condom used.

Tr. at 161. By finding Hamilton guilty of attempted sexual battery, the jury apparently rejected the victim's statement made to Nurse

Yaver. Indeed, there was ample evidence of attempted sexual battery without Nurse Yaver's testimony describing the victim's statement. Such evidence is entirely independent of the victim's account that Hamilton had hit and raped her.

The evidence at trial included the testimony of part-time private investigator Jack McDowell, who was conducting independent covert surveillance in the early morning hours of August 3, 2004, in the Riverside neighborhood. Id. at 30-34. McDowell testified that he saw a woman struggling with a large black man and heard what sounded to him "like a woman crying or exclaiming." Id. at 36. He stated that "she was trying to make noises that were almost [a] call for help or exclamation of distress but that was being impeded by the actions" of the man. Id. at 37. McDowell said that "she was definitely trying to get away" from the man. Id. at 37-38. According to McDowell, he saw the man kicking and punching the victim, heard a "sob or whimper" after the punching, and saw the man reach down and say something in a "[r]ough, angry, demeaning" tone of voice. Id. at 42-43. McDowell stated that he saw the man "dragging, pulling, persuading, like it was a pulling and then a talking component, then another couple more pulls." Id. at 43-44.

Kristan Renee Hunter lived near the scene of the crime. Id. at 61. Hunter testified that she was awakened just before 3:00 a.m. that morning and was getting a glass of water when she heard crying and whimpering from a female. Id. at 66. According to Hunter, she

24

looked out of her apartment window, did not see or hear anything, and returned to her bed; she then "heard the crying again" and "heard a female say no." Id. at 66-67. She testified:

> I heard, no, and some more crying. And then I heard her say stop. And then that was when I looked out my bedroom window and I -- from my bedroom window I can see directly down in that space between those two buildings behind my place and that's when I saw him raping her.
>
> . . . .
>
> It was -- it was dark, and I could definitely tell that it was a male and I saw his -- his body was thrusting back and forth, and then I ran to get my phone to call 911.
>
> . . . .
>
> It was her left arm up against that wall and it was kind of just moving back and forth, and seemed very disoriented.

Id. at 67, 68. She stated that she "was looking directly" at the man's back, and "[i]t looked like he was propped up by his hands" and was thrusting "[h]is hips, his body." Id. at 68. According to Hunter, once she retrieved her phone to call 911, she looked out the window again and saw "[t]he same thing" and the victim's "crying and whimpering was on and off" and "[e]ventually [the victim] just stopped." Id. at 68-69. Hunter stated that she described the ongoing incident to the 911 operator, and confirmed that the man never stopped his thrusting while she was on the phone. Id. at 69. She further testified as to what transpired when the police arrived.

25

It seemed like a long time . . . . And
then eventually I heard some noise, I heard
her start yelling help, and then -- and then
the officers and the dogs.

. . . .

My memory of this part isn't as great. I
remember as soon as -- as soon as she started
yelling help, help, help, he stood up and
pulled his pants up and the girl backed up
more toward my place and they started to try
to detain him. An officer came back and put a
blanket over -- around her. She -- she was
holding parts of her shirt, I don't know, I
can't remember if her shirt was all the way
off or I just I could see her bra.

. . . .

She had -- she had her pants on and I
could see her bra and I can't remember if her
shirt was half on or totally off.

Id. at 70, 71. On cross-examination, the following colloquy

transpired:

Q. Okay. Now, you don't know why this
woman was crying and whimpering, do you?

A. Because she was being raped.

Q. You don't know -- well, did you ever
actually see them having sex?

A. Technically I can't say that I saw
penetration.

Q. In fact, you told the 911 operator you
couldn't say that he was actually raping her?

A. Well, when she asked me that question
do you see -- can you see him raping her, I
paused thinking in my head I know what the

definition of rape is, and I said no because I couldn't see actual penetration.[6]

Q. Absolutely. You never saw his penis in or upon the vagina of this woman?

A. Correct.

Q. You never actually saw any part of her body other than her arm?

A. Correct.

Q. You have no idea whether her pants were up or down?

A. None.

Q. You never saw him hit her?

A. No.

Q. You never saw him drag her into the alley?

A. No, they were already there.

Q. You don't know if she had given consent or not?

A. When I heard her say no and stop.

Q. But you –

A. I wouldn't have called the police if I hadn't heard that.

Q. You don't know what she was saying no and stop about, though?

A. I assumed it was about the sex.

. . . .

---

[6] Hunter testified that she worked for the State Attorney's Office as a victim's advocate. Tr. at 76.

> A. In my gut I knew that's what was
> happening, I would never have called the
> police if I didn't think that.

Id. at 78-79.

Jacksonville Sheriff's Officer Jason Charles Royal, who was assigned to the canine unit, responded to the 911 call and testified as follows:

> At that time I turned, I had already locked my
> vehicle, so I put the key in the door and was
> unlocking the door to get Ranger [(his canine
> dog)] out of the vehicle. At that time I heard
> a woman's voice saying, please don't leave,
> please don't leave, please help me. And at
> that time I turned and put my flashlight on
> the area that I heard the voice coming from
> and I seen [sic] a woman on the ground on her
> back looking back at me with a black male on
> the top of her with his arm around her head
> and his hand looked like he was trying to put
> his hand over her mouth.

Id. at 89. The following colloquy transpired:

> Q. Okay. Officer, the people that you're
> referring to, were they sort of like heads
> toward you or heads away from you pointing
> down.
>
> A. Heads toward me.
>
> Q. Did you notice anything about their
> state of clothing?
>
> A. Yes, sir, it was in disarray.
>
> Q. Could you tell whether there was any
> clothing removed from either individual?
>
> A. Yes, when the suspect actually got up,
> his pants were around his ankles and the
> woman, it appeared her pants have [sic] been
> torn down around her ankles.

28

Q. So was either of them clothed in the genital area?

A. No, sir, weren't.

Q. When you observed them please describe the relative position of their body; was he on top of her, was she on top of him, what was going on?

A. She was on her back and he was on top of her in, like, a head lock.

Q. Did she appear to be enjoying what was going on?

A. No, sir.

Q. Was she offering resistance as far as you could tell?

A. Yes, sir, she was trying to get out from underneath him.

Id. at 93-94. Royal identified Hamilton as the male involved. Id. at 94-95.

Jacksonville Sheriff's Officer Frederick Ralph Dash also responded to the 911 call and testified as follows:

A. Yes, sir, when I got there Officer Bowen had his dog out and his dog began to alert, then we heard [a] cry for help coming between the building.

Q. Cry for help, female, male, could you tell?

A. Female.

. . . .

A. Upon my arrival Officer Bowen and myself arrived and we heard the cry for help. And went back toward the alleyway. And we seen [sic] the suspect coming off of a victim who

29

> was crawling off the top of her. He was in the
> prone position crawling. And as he crawled out
> you could see his pants were slightly down.

Id. at 116, 117.

Canine Officer Wes Bowen, who also responded to the 911 call,

testified as follows:

> Yes, as I was saying when my dog started
> to indicate and I felt there was a victim and
> suspect were possibly close by, just then
> Officer Royal had pulled up and actually
> pulled his car up to the Hardees. Pulled into
> the Hardees actually just shy of the Hardees
> parking lot and he started to get out of his
> car. I started to say to them hey, I think
> they're right here somewhere by the way the
> dog is acting, right then I saw him shine his
> flashlight back behind the Hardees. And I
> looked to the area where the flashlight was
> and immediately I saw the victim and suspect,
> the suspect was on top of the victim. And he
> started to stand up and I noticed that he
> didn't have any pants on. And then at the same
> time the victim cried out something and the
> victim started to get up and I saw she didn't
> have pants on. The suspect started to crawl
> out, looked like he was getting ready to try
> and escape so we started running toward him
> yelling at him to come out, show his hands.

Id. at 138-39.

There was ample evidence, unrelated to Nurse Yaver's

testimony, of Hamilton's attempted sexual battery upon the victim.

Upon review of the record as a whole, this Court concludes Hamilton

has not established that any purported Confrontation Clause error

"had a substantial and injurious effect or influence in determining

the jury's verdict." Nor has he shown "more than a reasonable

possibility that the error contributed" to the conviction. Trepal

v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1114 (11th Cir. 2012)
("The question turns on whether the Court can 'say, with fair
assurance,' that the verdict 'was not substantially swayed by the
error[.]'"). Given the record, Hamilton is not entitled to habeas
relief as to ground one.

## B. Ground Two

As ground two, Hamilton asserts that the trial court violated
his First Amendment right to freedom of speech when it permitted
the State to provide evidence of the victim's statements, but did
not permit him, during his trial testimony, to recount statements
made by the victim. Petition at 6. Respondents argue that Hamilton
did not present this First Amendment claim on direct appeal, and
thus Hamilton's freedom of speech claim has not been exhausted and
therefore is procedurally barred. See Response at 16-18. On this
record, the Court agrees that the claim has not been exhausted and
is therefore procedurally barred since Hamilton failed to raise the
claim in a procedurally correct manner. Hamilton has not shown
either cause excusing the default or actual prejudice resulting
from the bar. Moreover, he has failed to identify any fact
warranting the application of the fundamental miscarriage of
justice exception.

Even assuming that Hamilton's claim is not procedurally
barred, Hamilton is not entitled to relief. To the extent Hamilton
argued this issue on direct appeal, see Resp. Exs. G; I, the State

filed an Answer Brief, <u>see</u> Resp. Ex. H, and the appellate court affirmed Hamilton's conviction and sentence per curiam as to this issue, <u>see</u> <u>Hamilton</u>, 929 So.2d 575; Resp. Ex. J. In its appellate brief, the State addressed the claim on the merits, <u>see</u> Resp. Ex. H at 25-26, and therefore, the appellate court may have affirmed Hamilton's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Hamilton is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[7] Hamilton's First Amendment claim is nevertheless without merit. The Florida Evidence Code dictates the admissibility of evidence and witness testimony. Specifically, Florida Statutes section 90.801(c) provides that hearsay is "a statement, other than the one

---

[7] <u>See</u> Response at 16-18.

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Florida Statutes section 90.803 sets forth numerous exceptions to Florida's evidentiary hearsay rule. At trial, Hamilton testified. See Tr. at 189-249. Hamilton wanted to testify about how the victim allegedly had said she was beaten up by another man shortly before the incident involving Hamilton. See id. at 196. The trial judge sustained the prosecutor's objection. See id. Throughout Hamilton's testimony, the trial judge admonished Hamilton that he would not be permitted to testify about what the victim said.

Although alleged state law errors generally are not grounds for federal habeas relief, "a habeas court may review a state court's evidentiary rulings in order to determine whether those rulings violated the petitioner's right to due process by depriving him of a fundamentally fair trial." Copper v. Wise, 426 F. App'x 689, 692 (11th Cir. 2011) (citing Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996)). The Eleventh Circuit explained:

> Of course not all errors in state trial proceedings support claims for habeas relief. As relevant here, a federal court reviewing a state prisoner's habeas petition may not "reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991), but it may review state evidentiary rulings to determine whether the rulings violated the petitioner's due process rights. Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996). In such instances, the inquiry is limited to determining whether evidentiary errors "'so infused the trial with

> unfairness as to deny due process of law.'"
> Felker, 83 F.3d at 1311 (quoting Lisenba v.
> California, 314 U.S. 219, 228, 62 S.Ct. 280,
> 286, 86 L.Ed. 166 (1941)) (citations omitted).

Smith v. Jarriel, 429 F. App'x 936, 937 (11th Cir. 2011). "To constitute a violation of a defendant's due process rights, the admitted evidence must have been (1) erroneously admitted, and (2) 'material in the sense of a crucial, critical, highly significant factor in the [defendant's] conviction.'" Hill v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 805, 810 (11th Cir. 2014) (per curiam) (citation omitted), cert. denied, 135 S.Ct. 1483 (2015). In the context of the trial as a whole, the trial court's ruling, see Tr. at 196, resulting in Hamilton not being permitted to testify about what the victim allegedly told him about another man beating her, did not so infuse the trial with unfairness as to deny Hamilton due process of law. The trial judge sustained the State's objections to hearsay throughout Hamilton's testimony and admonished Hamilton numerous times that he would not be permitted to testify as to what the victim or other individuals said that morning. See id. at 194, 195, 196, 198, 199, 209, 212, 213, 215, 220. Nevertheless, the jury heard Hamilton's account of how he met the victim, what she looked like each time he saw her, and what transpired that morning between them. Hamilton is not entitled to federal habeas relief on ground two.

## C. Ground Three

As ground three, Hamilton asserts that counsel (Debra Billard)
was ineffective because she failed to investigate witnesses and
present a videotape to the jury that would have been "helpful" to
his defense. Petition at 8. Hamilton raised the ineffectiveness
claim in his Rule 3.850 motion in state court, and the circuit
court held an evidentiary hearing concerning this issue.[8] The court
ultimately denied the post-conviction motion with respect to this
claim, stating in pertinent part:

> 1. Debra Billard is an experienced and
> well respected Assistant Public Defender, who
> had been practicing criminal defense law for
> 18 years at the time of the hearing. Ms.
> Billard testified that, while it was true that
> she did not obtain any surveillance camera
> films or photographs from stores in the
> neighborhood where the jury found that the
> defendant kidnaped, battered and attempted to
> rape the victim in this case, the defendant
> took the stand in the trial and testified at
> great length as to how he and the alleged
> victim had been drinking and smoking crack
> cocaine together and had been together for a
> couple of days. She testified that the State
> never disputed that point. The State conceded
> that the defendant and the victim were not
> strangers during the trial. The victim was not
> present for the trial and did not testify. She
> apparently was incarcerated in Tennessee at
> the time of the trial.
>
> 2. The motion complains of the fact that
> the victim told the police that she and the
> defendant were strangers. However, as the
> victim did not testify, the jury never heard

---

[8] At the evidentiary hearing, the court heard testimony from
Hamilton and Debra Billard (Hamilton's trial counsel).

about this issue from her or any other
witness, other than the defendant. As the
State conceded this issue, there was no reason
for Ms. Billard to seek or obtain any photos
or videos showing the victim and the defendant
together prior to the commission of the crime.

3. Several eyewitnesses testified that
they saw the defendant dragging the victim
through an alley, stomping on her, beating
her, and then appearing to have sex with her
in an alley behind a garage. One witness was
Jack McDowell, a private investigator who was
using binoculars to stake out a convenience
store to investigate allegations that the
clerk was giving away inventory to his
friends. Another was a paralegal who worked
for the State Attorney's Office, who lived
above the alley. She testified that she heard
screaming under her window and looked out and
saw what she believed to be a sexual battery
taking place. Another was an officer from a
canine unit who arrived on the scene, heard
someone yelling "Help me," and observed a
naked girl on the ground and a man getting up
and putting on his pants.

4. Ms. Billard also testified that the
defendant never made any mention to her about
surveillance film or photos until shortly
before the case was set for trial. When he
brought up this subject, she told him she
would ask for a continuance of the trial date
so that she could subpoena the films and
photos from stores in the area and investigate
whether they contained any exoneration
evidence. She testified that the defendant
refused to let her ask for a continuance
because he did not want to waive speedy trial.
She testified that she brought the issue up to
the Court during a pretrial hearing, and the
Court inquired of him "Do you want to take
more time and let Ms. Billard get all of these
films?", and the defendant answered that he
did not want a continuance, he wanted a speedy
trial. Ms. Billard testified that she
therefore was unable to obtain the films

because of the defendant's decision, whether the films exonerated him or not.

5. State Exhibit 2, admitted into evidence at the evidentiary hearing, is a transcript of the hearing wherein the Court inquired of the defendant on this issue and he declined his opportunity to continue the trial and have the tapes produced.

6. Ms. Billard also testified that she had since the trial reviewed a videotape of the store that the defendant and victim visited some time before the crime and that nothing in the video showed anything she could have used. In her testimony she stated "You couldn't really see anything."[9]

7. Ms. Billard also testified that even if the State had not conceded the point, no evidence of the defendant and victim knowing each other prior to this crime would have exonerated him, given the evidence in this case. According to Ms. Billard, with the evidence in this case, "They could have been married for twenty years and it wouldn't have changed the accusation."[10]

8. Ms. Billard is a well respected and experienced public servant and attorney in Jacksonville, Florida. She enjoys an excellent reputation as a criminal defense attorney. She practices law subject to the requirement that she maintain truthfulness with all tribunals at all times. She has no interest in the outcome of this hearing, and her demeanor while testifying was frank, open and responsive.

9. The defendant is a six-time convicted felon who is desperately trying to avoid life imprisonment for a brutal and violent crime. He also has several misdemeanor convictions

---

[9] EH Tr. at 25.

[10] EH Tr. at 25.

for crimes involving dishonesty, and his demeanor while testifying was evasive and manipulative.

10. In all instances where the motion or the defendant's testimony conflicts with the testimony of Ms. Billard, the Court finds Ms. Billard to be credible, and the defendant to be unworthy of belief.

11. The defendant waived this issue by declining his opportunity to continue the trial date and allow Ms. Billard to procure the films in question.

12. Whether the victim knew the defendant or not was totally irrelevant, given the evidence in the case; further, the State conceded that the victim knew the defendant and the evidence was more than sufficient to convict defendant regardless.

Resp. Ex. Y at 7-10. On Hamilton's appeal, the appellate court affirmed the trial court's denial per curiam, see Hamilton, 130 So.3d 1279; Resp. Ex. BB.

To the extent that the state appellate court affirmed the trial court's denial on the merits, the appellate court's opinion affirming the trial court's denial of this claim is the last adjudication on the merits for purposes of this Court's deferential review under § 2254(d). Thus, the Court considers this ineffectiveness claim in accordance with the deferential standard for federal court review of state court adjudications. The post-conviction court's reasoned order serves as evidence that the appellate court's decision is reasonable. See Wilson, 2016 WL 4440381, at *9. Additionally, the transcript of the state

evidentiary hearing supports the post-conviction court's factual findings. After a review of the record and the applicable law, the Court concludes that the state appellate court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hamilton is not entitled to relief on the basis of this claim.

Moreover, even assuming the state appellate court's adjudication of this claim is not entitled to deference, Hamilton's ineffectiveness claim is still without merit. The trial court's conclusion is fully supported by the record. Moreover, "[d]etermining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (quoting Marshall v. Lonberger, 459 U.S. 422 (1983)). Questions about the credibility and demeanor of a witness involve issues of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court." Id. (citations omitted). It is a petitioner's burden to rebut the presumption of correctness by clear and convincing

evidence. <u>Burt</u>, 134 S.Ct. 10. After the evidentiary hearing in state court, the circuit court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner Hamilton. <u>See</u> Resp. Ex. Y at 10, ¶10 ("In all instances where the motion or the defendant's testimony conflicts with the testimony of Ms. Billard, the Court finds Ms. Billard to be credible, and the defendant to be unworthy of belief."). Here, Hamilton has not rebutted the trial court's credibility finding by clear and convincing evidence. Given the trial court's credibility determination, Hamilton's claim is wholly unsupported, and therefore must fail.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 1483 (2015). The presumption that counsel's performance was reasonable is even stronger when, as in this case, defense counsel Ms. Billard is an experienced criminal defense attorney.[11] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions

---

[11] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000); <u>see</u> <u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999). Ms. Billard was admitted to the Florida Bar in 1991. <u>See</u> http://www.floridabar.org. At the time of Hamilton's trial in 2005, Billard was an experienced trial lawyer. At the time of the 2009 evidentiary hearing, she had been practicing criminal defense law for eighteen years. <u>See</u> EH Tr. at 20.

were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Hamilton must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Hamilton has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. As the Eleventh Circuit has recognized, "[t]here is much wisdom for trial lawyers in the adage

about leaving well enough alone." Waters, 46 F.3d at 1512. Counsel's decision as to "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess." Id.; Chandler v. United States, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000) (describing the decision to call some witnesses and not others as "the epitome of a strategic decision" (quotation marks and citation omitted)). Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991).

Even assuming arguendo deficient performance by defense counsel, Hamilton has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had investigated the case differently or more thoroughly and presented the store videotape and/or witnesses at trial to show the jury that he and the victim were not strangers. Hamilton's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Hamilton is not entitled to federal habeas relief on ground three.

### D. Ground Four

As ground four, Hamilton asserts that his appellate counsel was ineffective because he failed to raise the following issue on direct appeal: the trial court erred when it sentenced him as a habitual felony offender where the State failed to prove that he had committed two or more felonies within five years. Petition at 9. Hamilton raised the claim in his state "Petition Alleging Ineffective Assistance of Appellate Counsel." Resp. Ex. NN. The appellate court ultimately denied the petition on the merits. Hamilton, 962 So.2d 366; Resp. Ex. OO. Respondents argue that Hamilton's claim has not been exhausted and therefore is procedurally barred. See Response at 26. On this record, the Court will assume that Hamilton sufficiently exhausted the claim.

Thus, assuming that Hamilton's claim is a sufficiently exhausted claim of federal constitutional dimension, Hamilton is still not entitled to relief. The appellate court denied Hamilton's petition alleging ineffective assistance of appellate counsel on the merits. Resp. Ex. OO. Therefore, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable

43

determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hamilton is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Hamilton's ineffectiveness claim is without merit. Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. In order to establish prejudice, the court must review the merits of the omitted claim. See Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (citation omitted). Appellate counsel's performance is prejudicial only if "the neglected claim would have a reasonable probability of success on appeal." Id. at 1265 (citation and quotations omitted); Farina v. Sec'y, Fla. Dep't of Corr., 536 F. App'x 966, 979-80 (11th Cir. 2013) (citation omitted) ("To determine whether there was prejudice, therefore, we must evaluate whether there was a reasonable probability that [petitioner's] argument - that the prosecutor's misconduct constituted fundamental error - would have won the day . . . on direct appeal."), cert. denied, 135 S.Ct. 475 (2014).

Hamilton has failed to establish that appellate counsel's failure to raise the issue on direct appeal was deficient performance. See Sentencing Tr. at 279 ("I find Mr. Hamilton meets the statutory criteria and will therefore adjudicate him to be [a]

44

habitual felony offender under chapter 775.084."). Even assuming arguendo deficient performance by appellate counsel, Hamilton has not shown resulting prejudice. See Fla. Stat. § 775.084(1)(a). Given the record, Hamilton has not shown a reasonable probability exists that the claim would have been meritorious on direct appeal, if counsel had raised the claim in the manner suggested by Hamilton. Accordingly, Hamilton's ground four is without merit since he has neither shown deficient performance nor resulting prejudice.

### E. Remaining Grounds

It appears that Hamilton is raising two more grounds in the Reply that were not presented in the Petition. First, Hamilton asserts that the trial court erred when it excluded testimony relating to the victim's history of alcohol, prostitution, and drug usage. See Reply at 2. Hamilton argued this issue on direct appeal, see Resp. Ex. G; the State filed an Answer Brief, see Resp. Ex. H, and the appellate court affirmed Hamilton's conviction and sentence per curiam as to this issue, see Hamilton, 929 So.2d 575; Resp. Ex. J. In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. H at 27-29, and therefore, the appellate court may have affirmed Hamilton's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the

45

Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Hamilton is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, Hamilton's claim is still without merit. In the context of the trial as a whole, the trial court's ruling as to the proffer, see Tr. at 27-28, did not so infuse the trial with unfairness as to deny Hamilton due process of law. The jury heard Hamilton's account that he gave the victim drugs in exchange for oral sex, see Tr. at 207-08, and that she later agreed to exchange drugs for intercourse, see id. at 219-20. Undoubtedly, with Hamilton's testimony at trial, the jury heard evidence about the victim's less than desirable character and was able to assess that evidence and give it the proper weight, if any. Hamilton is not entitled to federal habeas relief on this issue.

Secondly, Hamilton asserts that the State should not be allowed to justify other errors made at his trial that led to unfairness in violation of his right to due process of law. See Reply at 12. It appears that he is complaining that he was convicted and sentenced for kidnaping (count four) and false

46

imprisonment (count five). Hamilton argued this issue on direct appeal, see Resp. Ex. G, and the State filed an Answer Brief, see Resp. Ex. H.  In its appellate brief, the State addressed the claim on the merits. See id. at 30-33. The appellate court affirmed Hamilton's conviction and sentence per curiam as to this issue, and stated in pertinent part:

> On appeal, appellant raises several issues, including an argument that his convictions for both kidnaping and false imprisonment violate double jeopardy. **The State concedes error on this double jeopardy ground, and because of this concession, we reverse and vacate appellant's conviction and sentence for false imprisonment.**

Hamilton, 929 So.2d 575; Resp. Ex. J (emphasis added). Hamilton acknowledges that he was ultimately resentenced, but apparently believes that the State and trial court are still responsible for any resulting unfairness. Upon review of the record as a whole, this Court concludes Hamilton has not established that any purported trial errors had a substantial and injurious effect or influence in determining the jury's verdict. Nor has Hamilton shown "more than a reasonable possibility" that any alleged errors contributed to the conviction. Trepal, 684 F.3d at 1114. Given the record, Hamilton is not entitled to habeas relief as to this issue.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Hamilton seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Hamilton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Hamilton appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of November, 2016.

MARCIA MORALES HOWARD
United States District Judge

sc 11/7
c:
Terry Tyrone Hamilton, FDOC #788941
Counsel of Record